# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | P. Michael Mahoney |
|---|---|---|---|
| **CASE NUMBER** | 02 C 50338 | **DATE** | 8/11/2004 |
| **CASE TITLE** | AGC vs. Marsh, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   For the reasons stated on the attached Memorandum Opinion and Order, Defendants' Motion to Strike is denied. The parties are given ten days from service of this Order, as calculated under Rule 6, to appeal to Judge David H. Coar pursuant to Rule 72 of the Federal Rules of Civil Procedure.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | 8-12-04 | 54 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| ✓ | Copy to judge/magistrate judge. | | 8/11/2004 | |
| | | | date mailed notice | |
| sp | courtroom deputy's initials | Date/time received in central Clerk's Office | sp mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| AIRCRAFT GEAR CORPORATION, ) <br> an Illinois Corporation, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CLAYTON S. MARSH, and ROPES & ) <br> GRAY LLP, a limited liability partnership, ) <br> ) <br> Defendants. ) | Case No. 02 C 50338 <br><br> Philip G. Reinhard <br> P. Michael Mahoney |

## Memorandum Opinion and Order

Aircraft Gear Corporation ("AGC" or "Plaintiff"), an Illinois corporation with its principal place of business in Rockford, Illinois, sued Clayton S. Marsh ("Marsh"), a Massachusetts citizen and Ropes & Gray LLP ("Ropes & Gray")(collectively "Defendants"), a legal partnership with its primary place of business in Boston, Massachusetts and with none of its partners residents of Illinois, alleging attorney negligence (Count I), or in the alternative, breach of attorney/client contract (Count II). Currently, before this court is Defendants' Motion to Strike Plaintiff's Rebuttal/Supplemental Report of Warren Lupel ("Motion to Strike"). Plaintiff has filed a response and Defendants have filed their reply. For the following reasons, Defendants' Motion to Strike is denied.

## Background[1]

In 1986, AGC opened an additional aerospace manufacturing facility in Chandler, Arizona in anticipation of increased defense industry business from the United States government. However, the government reduced its defense spending after AGC opened its Chandler facility, so AGC sought

---

[1] The background section for this opinion is based on materials attached to the instant motion. These materials include, but are not limited to, the parties 56.1 Statements of Undisputed Facts and the factual background section contain in each experts report.

contracts from private aerospace companies. By the late 1980s, Boeing Corporation ("Boeing") was the primary customer of AGC's Chandler facility. AGC manufactured aircraft transmissions for Boeing. In 1991, AGC entered into a fifteen year fix price contract with Boeing for the manufacturing of transmissions for Boeing 777 aircrafts. At the time, AGC was the sole manufacturer of transmissions for the 777 aircrafts.

AGC began to lose money on the 777 contract. In 1994, Boeing granted AGC's request for a price increase on the 777 contract. AGC apparently still continued to lose money. In 1996, AGC negotiated a second price increase to the 777 contract. After some other financial mishaps, AGC apparently attempted, on March 12, 1998, a third prince increase on the 777 contract. This was denied.

With the denial of its third request, AGC executives met with Boeing representatives to detail how AGC stood to lose over $10 million over the remainder of the 777 contract. AGC again requested another price increase on the 777 contract or an early exit from the contract. Apparently, after this request, Boeing decided to replace AGC.

In early 1999, Boeing allegedly informed AGC they would be transferring AGC's entire statement of work for Boeing to Moog. Boeing informed AGC that Moog would not start producing 777 parts until July 2000 and that Boeing needed to have some overlap between the two producers. Thus, Boeing required AGC to produce parts through December 31, 2000.

AGC was allegedly not satisfied. Specifically, AGC did not want to produce 777 parts through December 31, 2000 without a price increase. Around February 19, 1999, AGC contacted Marsh, who may or may not have advised AGC to stop shipments. On March 12, 1999, apparently AGC's Board of Directors met at the Chandler facility and discussed threatening Boeing with a

stoppage of shipments. After this meeting, allegedly one of AGC's board of directors informed the shipping manager at the Chandler facility to not ship any parts to Boeing. Apparently, three days after this meeting, an AGC executive contacted Boeing and threatened to stop shipment unless Boeing agreed to negotiate a termination agreement with a price increase.

On March 18, 1999, AGC received a new termination agreement from Boeing which offered AGC a price increase. Defendants allege Boeing only offered the price increase because AGC's threat to stop shipments would jeopardize the entire 777 production line. On March 19, 1999, AGC faxed a counter offer to Boeing's offer.

On June 20, 2000, Boeing notified AGC by letter that Boeing considered the above referenced March 1999 price increase unacceptable and that Boeing would immediately begin recouping the price increase paid to date. Upon receipt of this letter, AGC apparently decided to close down the Chandler facility.

While some other communications continued to occur between AGC and Boeing, AGC ultimately negotiated an agreement with Moog for the purchase of AGC's remaining inventory and equipment. The Chandler facility was sold in 2002.

Litigation between AGC and Boeing ensued in a federal district court in the State of Washington. Specifically, AGC sued Boeing alleging that it was entitled to recover the disputed price increases and the losses on the remainder of the Boeing contracts through December 2000. Boeing, in turn, filed a counterclaim alleging, *inter alia*, duress. In August 2001, the trial court ruled upon cross-motions for summary judgment, granting partial summary judgment in Boeing's favor. Specifically, the district court apparently found that AGC's March 15, 1999 threat to stop shipments was an anticipatory breach of the 777 contract. A trial ensued which resulted in a hung jury on the

issue of duress, although the jury apparently did find in favor of AGC on Boeing's claim that the termination agreement was a cover contract. In June 2002, the case was tried again. On June 18, 2002, a jury found that the 1999 price increase was the product of duress and rendered a verdict in Boeing's favor for $1.83 million. On July 5, 2002, AGC filed the present suit in Winnebago County against Defendants alleging attorney negligence, or in the alternative, breach of attorney/client contract.

This case was removed to this court on August 30, 2002. On December 18, 2002, a case management order was entered establishing a fact discovery cutoff date of March 31, 2003 and a dispositive motions due date of April 30, 2003. The fact discovery cutoff date was subsequently extended to June 30, 2003, August 29, 2003 and finally September 30, 2003. On November 17, 2003, this court entered an Order requiring Plaintiff to make its Rule 26(a)(2) disclosures by January 30, 2004 and requiring Defendants to make their Rule 26(a)(2) disclosures by March 15, 2004. On February 4, 2004, in response to a motion by Plaintiff, this court issued an Order granted AGC's request for an extension of time to March 1, 2004 to submit Rule 26(a)(2) disclosures and expert depositions by March 31, 2004. On March 1, 2004, Plaintiff disclosed the expert report of attorney Warren Lupel. Plaintiff subsequently requested, and was granted, an extension of the deposition date of Warren Lupel to April 9, 2004. Defendants deposed Mr. Lupel on April 9, 2004. Defendants served their expert reports on Plaintiff on May 3, 2004. Plaintiff took the deposition of Defendants' legal malpractice expert Frederic Tausen, on May 19, 2004. Arguing that this court did not set a deadline for the production of rebuttal reports, on May 28, 2004, Plaintiff submitted Rebuttal Expert Report of Warren Lupel under Fed. R. Civ. P. 26(a)(c) or in the alternative, Supplement To Rule 26(a)(2)(B) Disclosure Pursuant to Fed. R. Civ. P. 26(e)(1).

4

A. *Mr. Lupel's Opinions*

Mr. Lupel originally put forth two opinions with regard to this case:

> First, Marsh was negligent in the advice provided to AGC during March of 1990. If properly advised, AGC could have negotiated an enforceable termination agreement that would have required Boeing to pay all amounts due under the agreement. Second, Marsh and Ropes and Gray failed to act within acceptable standards of care during the period of June - July 2000 in advising AGC regarding its options concerning Boeing's rejection of the Termination Agreement. It is my opinion that had AGC been given the correct advice, AGC would have continued to produce under the 777 contract in place prior to the Termination Agreement and would not have filed suit against Boeing, thereby acquiring $2.2 million from Boeing and not incurring approximately $1 million in attorney's fees.

(Report and Finding of Warren Lupel at 12). After setting out his two opinions, Mr. Lupel then proceeded to discuss both in detail.

B. *Mr. Tausend's Opinions*

Subsequent to Mr. Lupel filing his Report and Findings, Defendants' expert, Fredric C. Tausend filed his Report and Opinions. Mr. Tausend presented three opinions with regard to the instant case:

> 1. The legal advice [Defendants] provided AGC from March 1, 1999 to March 15, 1999 satisfied the applicable standard of care.
>
> 2. The legal advice [Defendants] provided AGC from March 15, 1999 to March 19, 1999, satisfied the applicable standard of care.
>
> 3. The legal advice [Defendants] provided AGC from June 27, 2000 to July 20, 2000, satisfied the applicable standard of care.

(Report and Opinions of Frederic C. Tausend at 2). In coming to these opinions, and citing a Washington Supreme Court case and an Illinois Appellate Court case, Mr. Tausend wrote that a

lawyer giving advice on a contractual dispute meets the standard of care if "he exercises that degree of skill, diligence and knowledge commonly possessed and exercised by reasonable, careful and prudent attorneys in similar circumstances." (Id. at 4). Additionally, Mr. Tausend wrote "[t]he relevant law for purposes of defining the circumstances in this case is Washington law regarding anticipatory breach and duress." (Id.).

C. *Mr. Lupel's Rebuttal/Supplemental Opinions*

Subsequent to his deposition and after viewing Mr. Tausend Report and Opinions, Mr. Lupel filed a rebuttal/supplement report. Citing numerous cases (mainly from Washington state courts) as resources reviewed in preparation of his rebuttal/supplemental report, Mr. Lupel presented the following opinions:

> 1. [T]he use by Mr. Tausend of the phrase Washington law in this instance is not peculiar to Washington but rather a circumstance of general contract law.
>
> 2. I disagree with Mr. Tausend, in that Marsh, and by extension, Ropes & Gray's failure to change the March 18, 1999 termination agreement constituted "sound professional judgment."
>
> 3. [Defendants] failure to advise AGC in June - July 2000 period that the case against Boeing was weak and that the most probable outcome would be a verdict in Boeing's favor ... was negligent. The case was not properly analyzed by Ropes & Gray until November 2001. If properly advised AGC would have performed the contract through December 31, 2000, and not been left with millions of dollars in unusable inventory. Accordingly, AGC would have avoided the subsequent adverse judgment, and consequent attorneys' fees.

(Rebuttal/Supplemental Expert Report of Warren Lupel at 5-6).

D. *Defendants' Motion to Strike*

Defendants first argue that Mr. Lupel's rebuttal/supplemental report is not in fact a rebuttal.

6

Specifically, Defendants argue that Mr. Lupel's second report does not meet the standard set out in Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure because the report does not "solely" contradict or rebut evidence on the same subject matter as disclosed by Defendants. (Defs.' Mot. to Strike at 5). Rather, according to Defendants, for Mr. Lupel's second report to comply with Rule 26, Mr. Lupel would need to offer opinions that contradict Mr. Tausend's expressed opinions. Defendants argue Mr. Lupel's report does not.

Specifically, Defendants argue Mr. Lupel's second report does not contradict the Washington cases cited by Mr. Tausend or the relevancy of Washington law; but rather, Mr. Lupel's opines that the law of anticipatory breach in Washington is comparable to the law of Illinois. Although Mr. Lupel cites many Washington and Illinois cases for this proposition, Defendants argue the report does contradict or rebut Mr. Tausend's opinions that 1) the case cited by Mr. Tausend explicate Washington law on these two subjects; and 2) that Washington law is the relevant law for purposes of the 777 contract. (Id. at 6).

Additionally, Defendants argue that Mr. Lupel's second report contains on opinion that clearly does not rebut anything contained in Mr. Tausend's report. Namely, Defendants argue Mr. Lupel's opinion that Defendants did not properly analyze the case until November 2001 and if properly advised AG C would have performed the contract through December 31, 2000 does not rebut anything contained in Mr. Tausend's report because Mr. Tausend offered no opinions on an e-mail by a Mr. Kaufman, which Defendants argue is the basis for Mr. Lupel's new opinion.

Defendants also argue that Mr. Lupel's second report is not a supplemental report. Specifically, Defendants argue Mr. Lupel's second report does not comply with Rule 26(e)(1) of the Federal Rules of Civil Procedure because the report does not consist of newly discovered

information or a correction to a past error by Mr. Lupel. (Id. at 8). Rather, according to Defendants, Plaintiff is impermissibly attempting to correct a material omission from the initial disclosures. Lastly, Defendants argue that Plaintiff's attempted supplementation is not harmless to Defendants because Mr. Lupel's second report occurred after the time for deposing Plaintiff's expert had passed and after Defendants' expert had been disclosed and deposed. (Id.).

E. *Plaintiff's Response*

Plaintiff's argue that Mr. Lupel's second report is a rebuttal report as defined by the Federal Rules of Civil Procedure because Mr. Lupel's second report was intended to rebut the implications of Mr. Tausend that: 1) Washington law is unique and that only a lawyer from Washington can opine on the issue of duress and anticipatory repudiation as they apply to the instant case and, 2) that Mr. Lupel failed to consider Washington law or was unfamiliar with the relevant case law. (Pl.'s Resp. at 4). Additionally, Plaintiff's argue Defendants incorrectly characterize Mr. Lupel's report as containing a new theory of liability, that being, the opinion that Defendants failed to properly analyze the strengths and weaknesses of Plaintiff's lawsuit against Boeing. (Id.). Plaintiff's argue that this is not a new opinion; but rather, it is a "necessary implication of Plaintiff's complaint and refinement" of Mr. Lupel's prior opinion in response to Mr. Tausend's deposition testimony and report. (Id.).

Additionally, Plaintiff argues that if Mr. Lupel's second report is not a rebuttal, then it is a supplemental report pursuant to Rule 26(e)(1). Specifically, Plaintiff argues Mr. Lupel's second report is a supplement report because Plaintiff discovered from Defendants' expert disclosure and deposition that Defendants were taking the position that Washington law was somehow unique on the issues of anticipatory repudiation and duress and thus Mr. Lupel's familiarity with those issues

8

under Washington law were at issue. (Pl.'s Resp. at 14).

Finally, Plaintiff argues that barring Mr. Lupel's second report is too harsh a remedy and is not proportionate with any alleged infraction. The current state of this instant case is that no trial date has been set. Additionally, this case was recently transferred from Judge Reinhard in Rockford, Illinois to Judge Coar in Chicago, Illinois. Thus, in its current state, the case is not far enough along for Defendants to assert prejudice. (Id.).

## Discussion

This court will first address whether Mr. Lupel's second report is a rebuttal report. Federal Rules of Civil Procedure 26(a)(2) states:

> (A) In addition to the disclosure required by paragraph (1), a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence.
>
> (B) Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor; the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support of the opinions; the qualification of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.
>
> (C) These disclosures shall be made at the times and in the sequence directed by the court. In the absence of other directions from the court or stipulation by the parties, the disclosures shall be made at least 90 days before the trial date or the date the case is to be ready for trial or, ***if evidence is intended solely to contradict or rebut evidence***

> *on the same subject matter identified by another party under paragraph (2)(B), within 30 days after the disclosure made by the other party.* The parties shall supplement these disclosures when required under subdivision (e)(1).

Fed. R. Civ. P. 26(a)(2)(A), (B) and (C)(emphasis added).

Rule 26(a)(2)(C) provides that rebuttal disclosures are those that relate to evidence that is "intended solely to contradict or rebut evidence on the same subject matter identified by another party" in its expert disclosures. As an initial matter, it should be noted that although this court did not set a date for rebuttal, Mr. Lupel's second report was timely and served on Defendants within 30 days of Defendants' expert disclosures as required by Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure. Mr. Lupel's second report advances three new opinions: 1) Washington law in this instance is not peculiar to Washington but rather a circumstances of general contract law; 2) Defendants' failure to change the March 18, 1999 termination agreement did not constitute "sound professional judgment"; and 3) Defendants' failure to advise Plaintiff in June- July 2000 that the case against Boeing was weak and that the most probable outcome would be a verdict in Boeing's favor was negligent.

Turning to Mr. Lupel's first opinion in his second report, this court finds that Mr. Lupel's opinion that Washington law is not peculiar to Washington but rather circumstances of general contract law is a rebuttal opinion. Mr. Tausend's report clearly states, in his opinion, the relevant law in this case is Washington law. In attempt to rebut this opinion, Mr. Lupel's second report contains his opinion as to why Washington law is not necessarily unique and why general contract law applies, which according to Mr. Lupel, is similar in both Illinois and Washington. This is a rebuttal, as it is opinion on the same subject matter identified by another party (Mr. Tausend) and

is allowable under the Federal Rules of Civil Procedure.

The same can be said about Mr. Lupel's second opinion in his second report. Mr. Lupel's opinion that Defendants' failure to change the March 18, 1999 termination agreement did not constitute "sound professional judgment" also satisfies the Federal Rules of Civil Procedure. This is a rebuttal, as it is opinion on the same subject matter identified by Mr. Tausend. Therefore, Defendants' Motion to Strike is denied as to the two opinions discussed above.

While the above two opinions satisfy the Federal Rules of Civil Procedure as rebuttal opinions, Mr. Lupel's third opinion – that Defendants did not properly analyze AGC's position until November 2001 and if properly advised AGC would have performed the contract through December 31, 2000, and not been left with millions of dollars in unusable inventory - does not. However, this opinion is merely a restatement made by Mr. Lupel in his initial opinion. Specifically, Mr. Lupel initially wrote: "Second, Marsh and Ropes and Gray failed to act within acceptable standards of care during the period of June - July 2000 in advising AGC regarding its options concerning Boeing's rejection of the Termination Agreement. It is my opinion that had AGC been given the correct advice, AGC would have continued to produce under the 777 contract in place prior to the Termination Agreement and would not have filed suit against Boeing, thereby acquiring $2.2 million from Boeing and not incurring approximately $1 million in attorney's fees." While the language regarding November 2001 was not included, this statement does not necessitate the need for this court to strike the whole opinion.

## Conclusion

For the above stated reasons, Defendants' Motion to Strike is denied. The parties are given ten days from service of this Order, as calculated under Rule 6, to appeal to Judge David H. Coar pursuant to Rule 72 of the Federal Rules of Civil Procedure.

ENTER:

P. MICHAEL MAHONEY, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT

DATE: 8/11/04